May it please the court, Lawrence Kasten on behalf of the appellants. I'll try to reserve three minutes. The main arguments that defendants make in their brief is this. They say, now wait a minute. Appellants repeatedly said that they meant to dismiss their claims, their personal claims for good. There ought to be a consequence to that declaration. But what the prior appeal in this case, we've been calling it Milberg 1, what Milberg 1 makes clear is that saying your voluntary dismissal is final is most certainly not enough to make it so. If it were, then this court would have had jurisdiction in Milberg 1. The statements on which defendants seize were made by appellants in their attempt to argue why this case is different from Microsoft v. Baker. Appellants, to be sure, said that they meant to give way completely to an intervener. And to be sure, they thought that was a material distinction. And the Court probably won't be surprised to hear that, to this day, we continue to think this was a material distinction from Baker. But what we think doesn't matter. We were wrong. This Court gets the final word, and it held that Bobbitt's voluntary ---- Roberts. Well, we were wrong, too. I mean, it wasn't just you. We were ---- I think my name was on the last decision. So don't ---- Outstanding opinion that I'm sorry that we've lost. You're not totally at fault on this one. So, but the point, of course, is that this Court held that Bobbitt's voluntary ---- in Milberg 1, when it dismissed for jurisdiction, held that Bobbitt's voluntary dismissal was not final, and, moreover, that procedurally the cases were the same. So that in Baker, Mr. Baker said, I'm reserving my right to come back to the trial court if I win on appeal. We didn't say that. We said something 180 degrees differently. But this Court said it doesn't matter in Milberg 1. It said there is no difference, that appellants here are the same as Mr. Baker. To have denied jurisdiction on the ground that there's no difference, but to now say that that, as defendants do, that difference not only matters, but it means everything, would essentially be saying heads you lose and tails you lose. Assuming the Court's not going to consider its holding in Milberg 1, reconsider, the relevant question now is not what do we say, but what's the legal status of Bobbitt's voluntary dismissal? And, again, that question was answered by this Court in Milberg 1. As explained in our briefs, the answer is confirmed by Rule 54, which leaves no space between what is a final judgment and what is an appealable judgment. And now we know that the judgment entered after the voluntary dismissal here wasn't appealable. That was literally the Court's holding in Milberg 1. And the holding also would be consistent with Microsoft v. Baker itself. The literal holding of the case is that jurisdiction was lacking because Mr. Baker had tried but failed to create a final judgment. Assuming, again, the correctness of this Court's determination in Milberg 1, that this case is square with Microsoft v. Baker, that ought to be the result here as well. There's a fair—oh, I'm sorry. Why—obviously the district court did not have the benefit of the Henson decision. Correct. So if we agree that there is a possibility that with the district court exercising its discretion to review the Henson factors that the district court could have come to a different decision but might not, why wouldn't the appropriate course be to remand the case for the district court to take a look at Henson in the first instance because, of course, the district court didn't have that opportunity? Yeah, sure, Your Honor. Well, the case has been pending for a long time. Well, I'm sure we're going to hear about that from your colleague representing the defendant. That's right. But the record is reasonably clear here. And I think as in the Henson case, the Rule 60 factors turn largely on undisputed procedural facts. The district court really has no advantage vis-à-vis this Court with respect to application of the Rule 60 factors. The other point that I'd make is that while Henson had not been decided, there had been cases that, just like Henson, found that the six Phelps factors, which this Court found were the appropriate guideposts in Henson, had been decided and were briefed and cited to the district court in the Rule 60 motion. The Court saw those factors, all the Henson factors, and actually what it did was it was not completely consistent with those factors. And it ruled the factors that it found significant were things like judicial estoppel, Article III grounds, grounds that if they were taken to their logical extension really would compel the conclusion that you can't have Rule 60 relief from a voluntary dismissal ever. So the district court did have an opportunity to consider all these factors. It just found that they weren't the primary factors. And again . . . I agree with you on that. The question I have now is, okay, should . . . it's really Judge Bennett's question. Now that Henson has pointed in a different direction, somebody needs to go back and apply those non-exclusive factors and any other factors that may pertain. Is there a reason that we shouldn't say, okay, district court, just like the Supreme Court tells us, we're wrong, we're now telling you, no, you can't go off on the ground, you did. Please address these factors that have been apparently already briefed to you or if not already briefed, they surely will be. What other course do you suggest? I mean, I infer that you're saying we should exercise our judgment, go straight to it. But are we in a position to do that? I mean, the Henson factors haven't really been briefed to us either. We tried to cover all of them. And in fact, so there was a case called Torrent and a case called Connolly that essentially did the same analysis that the Henson court did. Henson's binding on us is precedent. That's right. And I'm cognizant of the fact that I'm standing here asking the court to do work instead of the district court. And obviously, I would understand, typically we do believe that district courts are in better position to make those kind of decisions. I think the point I'm trying to emphasize here is that really what we're talking about here are undisputed procedural facts. And with respect to the Henson analysis itself, really the factor that I think the defendants have articulated is one that can be considered by this court. And it goes back to what I said at the beginning. They say, well, wait a minute. We had an expectation of finality here because the plaintiffs have said that they meant to dismiss their case. And I think we can answer that question here, and it's easily answered. Again, the key distinction that they're trying to make is that they're saying that, look, the plaintiffs in the Henson case, well, they haven't said this because Henson wasn't decided at the time of the briefs, but the plaintiffs in Henson, like the plaintiffs in Microsoft v. Baker, tried to reserve for themselves the right to reappear in the district court, and we didn't do that. So defendants say, well, we have an expectation of finality. The defendants can't really suggest that they had an expectation of finality that's different from the expectation of the defendants in Henson. When Bobbitt voluntarily dismissed his claims, he was transparent about the fact that an intervener would be coming forward. And Labor filed his motion to intervene on the same day that voluntary dismissal was granted. So as in the Henson case, the defendants here knew the case wasn't over. Well, I mean, one of the things Henson talks about is, while you're correct, it does say some of these factors are guideposts, but we emphasize that each case has to be decided on a case-by-case analysis, although obviously the Henson court did what it did. But it is, to me at least, a fairly unusual factor that your clients were saying, you know, we're out and someone else is going to be rowing the boat from now on. And, I mean, that strikes me as fairly unusual. Maybe we could say it's irrelevant, but why wouldn't that be a factor that the district court should have the opportunity to look at in terms of discretion, which the Henson decision didn't take away from the district court? Yeah. So, again, only I think the fact that these are the very same arguments that have been briefed, and the case really has been up and down many times. And so in the interest of judicial economy, I think that this court could apply a Henson analysis. I think the analysis fairly strongly compels one conclusion. There's another point I would make, and that's that Henson sort of jumps straight, because of Henson, I think it's only reasonable to jump straight to the Rule 60B analysis. But there's a threshold question here that I think this court can and should consider before it even gets to Rule 60, and that is, well, there are two threshold questions. First is, do we even need Rule 60 to undo the voluntary dismissal? And I think the answer there is no. We may be the only party that's gone back and argued this instead of Rule 60. But when this court dismissed for lack of jurisdiction, we're back in the trial court. Before we filed the Rule 60 motion, on the day the mandate issued, we filed a different motion. And that motion said, as a matter of law, the voluntary dismissal here is not final, and therefore we can proceed with our claims. And that's true under this court's remand order. It's true under Microsoft v. Baker. It's true under Rule 54. So before you even get to the Rule 60 argument, district court, you should consider it. And the court shut that down. It ruled as a matter of law that we couldn't do that. And that, then it entered a new order. And that's significant, a new judgment. That's significant, too, because I think even before we addressed these Rule 60 questions, we have a new judgment that was entered in this case in 2018 that is different from the judgment that was entered in 2013. And it incorporates a new legal ruling. It incorporates a couple of rulings, actually. One was there was an undecided motion for intervention that was pending in the district court by Mr. Labor to intervene on the merits that just kind of got wiped out when the court entered a new judgment. But so that 2018 judgment matters. And it isn't, contrary to defendants' arguments, a carbon copy of the judgment that was entered back in 2013. And under the merger doctrine, that new judgment, all prior orders are merged into that judgment, including the order denying the class certification. On the Henson, one more point on the Henson analysis. I'm shifting gears now, even though I've said Rule 60b doesn't matter. To the extent it does, there's another important point. One of the few factors that the Henson court found counseled in favor of the defendant's position was that at the time of the voluntary dismissal, there was a circuit split. I think it's important to note for this court, we voluntarily dismissed well before the Henson plaintiffs. That's how long this case has been going on. And at the time we dismissed, there was no pending cert petition in Baker, obviously. And there wasn't even really a circuit split. To the extent there was, it was very shallow. There was a fourth circuit case that had gone off on Article III grounds. But the case that really created the circuit tension with the Microsoft versus Baker case, it's a third circuit case called Camisi. It was decided months after we voluntarily dismissed. So this really was a change in law, and it really did hit the plaintiffs. I'd like to try to reserve the rest of my time. Sure. One thing I might ask you about in your reply is what efforts have been made to mediate this case and whether the parties would be open to that idea. Anyway, still think about it. We can talk about it. Yes. No, yes. Thank you, counsel. Good morning, Your Honors. May it please the Court. My name is Gila Singer from Joseph Hague Aronson. I represent Milberg LLP, and I'm speaking today on behalf of Milberg and the other defendants appellees. Philip Bobbitt abandoned his case in 2013. He came before the Arizona District Court and assured defendants and that court that his case was gone and would never be picked up again. He renounced his ability to appeal. You say the case was gone. What do you mean? That Bobbitt's individual claims were gone and would never be picked up. Bobbitt said that he would never appeal those claims, and in fact the basis for his motion for voluntary dismissal was that his case would be gone finally and that that could only endure to the benefit of defendants. And he was successful on that point. But the case was not going to be gone, and the defendants understood that too. The defendants understood that an intervener was going to step in and take up the case, but we understood, and we all had a very strong reliance interest in the finality of Bobbitt's individual claims being gone. So explain that to me. In a class action where, you know, sometimes people do pursue their individual claims, but it's very rare for the same reason that Mr. Bobbitt said he wanted to get out. So explain the finality reliance when you knew that an intervener was going to be pursuing the appeal, and if the intervener won the appeal, the case was going to go back. Was your interest in finality that you were going to make an argument that no, this process doesn't work, and even though there's an intervener on appeal and even if the intervener wins the appeal, the case is still dead? We actually did make that argument, yes. That has been our position throughout, and we argued that before this court, and, you know, again, we briefed it for the Supreme Court as well. So, yes, that was in fact our position. But, I mean, that was your interest in finality, that even if somebody can intervene on appeal, that that really, any decision on that intervention on appeal would be an advisory opinion because even if the court said, yes, you're right, nothing could follow from it because nobody could pursue the case even if the intervener won the appeal? Well, I think, you know, what happened was that, you know, Labor intervened, he appealed, this court addressed his appeal. You know, we had moved for dismissal of that appeal based on a lack of appellate jurisdiction, and we had lost. Right, right, right. But, I mean, let's say that hadn't happened, that the Supreme Court hadn't ruled. Was your interest in finality that on going back to the district court you were going to argue, no, no, no, because Bobbitt gave up his claim and because the intervener only intervened for appeal purposes, the case is dead? I mean, that's a difficult question for me to answer because I think it assumes a lot of things that did not happen. I don't really know what we would have done in that circumstance, but I think the one thing that was clear at the time and remains clear now is that both the defendants, all of the courts, Bobbitt and Bobbitt's counsel had a very strong interest in the fact that Bobbitt was never going to reappear in this case. And that's what we're here to talk about. But what I'm trying to determine, because the Henson court looked at that finality argument, what I'm trying to determine is, in terms of your reliance interest in finality, what was the difference between what happened here and Mr. Bobbitt taking the appeal himself? I'm trying to understand what your reliance finality interest difference is because Mr. Bobbitt got out and somebody else came in on appeal. Well, I think that is a significant distinction, and I think it was part of the court's, the basis for the court's ruling in Henson was that there was really no interest in finality because the parties all understood that that named plaintiff was going to continue to litigate. And in fact, the parties had stipulated and included in their stipulation that the only circumstance in which that named plaintiff's case was going to be fully gone would be if the Ninth Circuit accepted the appeal and then affirmed the denial of class certification. Here, the whole premise for, you know, the appeal that Labor took was that Bobbitt was going to step aside and be gone forever. Labor then took up the appeal and was unsuccessful. There's just no basis now for Bobbitt to come back after five years of having no interest and no involvement in the case whatsoever to come back and say, my claim should be reinstated. I have to say, if any party should lack reliance interest in the claim of an individual within a class action, it would be your client. They can't possibly think that the individual claim is what matters here. What matters is the class action. And they understood that the class action effort was continuing. Tell me where I'm wrong. I mean, this... I mean, the Milberg firm has to know better than anybody else that it's about the class action, not about the individual claim of one particular plaintiff. Well, the situation that we're in now post-Microsoft is that the class claims are gone. Microsoft held that there is no appellate jurisdiction to hear a review of a class certification denial when a named plaintiff takes the tactic of voluntarily dismissing their claims in order to generate review. Well, does that necessarily mean the class action claims are gone forever? Suppose an individual plaintiff pursues the claim, prevails, and perhaps then they can argue, I think maybe with a little more traction than they can argue now, but would certainly try to argue that, okay, now we can revisit the class certification claim because this is the way the Supreme Court says it has to be done. So are we really certain that the class claims are gone forever? Well, I think Your Honor is absolutely correct. That is the normal course. And if Bobbitt had been diligent in pursuing that course of action, we would be in a very different situation now. He gave up the ability to do that. He gave up the ability to take his claims all the way to their final resolution and then appeal the class certification at that time. And that brings me back to my concern here, which is that the fact that an individual named plaintiff hands the baton to somebody else to serve, in effect, as the class representative and maybe the baton gets handed back, I'm not sure how your client can claim to have reliance interest in a belief that these claims for the class are gone forever. I mean, they were in the business of pursuing class claims through different individual plaintiffs as class representatives for decades and were very successful at it. So when we look at this factor of reliance interest, this is where I'm starting on this, I have to tell you I have real difficulty understanding how Milberg LLP could have had a reliance interest in believing that this case was closed forever. We had a reliance interest in that because that's what Bobbitt told us. How? Because that's what Bobbitt told us and that's what his counsel told us. But told us only about Bobbitt's individual claim, not about the possibility of somebody else taking the baton. They told us that Bobbitt was going to give up his individual claims forever so that an intervener could come in and take up that appeal. Our position was and has always been that that tactic was inappropriate and would never succeed. And we were correct. That's what the Supreme Court held in Microsoft. Well, but that was, I mean, not the tactic about an intervener, but wasn't that also true in Henson? I'm sorry, I don't understand what you mean. I mean, Henson was in a similar situation and we said not only are we not going to send it back for the court to reconsider, we're saying that the court has to grant the 60B, right? Well, I would actually point this court to an even more recent decision than Henson, which was not a published decision and so therefore it doesn't have binding precedential value, but I do think it's instructive in this case and that is the case of Stratford v. Eli Lilly and Company. Yes, I was on that panel. Yes, I'm sure Your Honor is very familiar. So in Stratford v. Eli Lilly, there was a similar fact pattern where a named plaintiff voluntarily dismissed their claims in order to take an appeal. But the timing was very different. In that case, the cert petition was filed before the case was done in the district court and, in fact, the cert petition was granted right after the case was dismissed and the decision came down fairly quickly. So I think that is a significant distinguishing factor in terms of the risk that the plaintiffs there assume. Well, I think that the risk... I know that the court was very focused in the Stratford case on the knowing risk that the plaintiffs took and decided to hold the plaintiffs there accountable for that knowing risk and I would argue that here, Bobbitt didn't just take a knowing risk that he was going to lose his claims forever. He chose deliberately to get rid of his claims forever and let somebody else take up whatever appeal that they wanted to take. For the same reason that this court held in Stratford that the named plaintiff there should be held accountable to its knowing decision, there's absolutely no reason that Bobbitt shouldn't be held to his choice in 2013 to give up his claims forever and to denounce the right to appeal them. Now that we know that Henson is there and his binding precedent that we're supposed to follow, it suggests that at least some court needs to visit the factors identified there and emphasize again the non-exclusive factors but answer a somewhat different question than the district court appeared to answer. We've heard a suggestion from plaintiffs that maybe that's something we should take up ourselves instead of remanding to the district court. What's your client's view on the issue? Well, I would point out first of all that if you're referring to the Phelps factors, we did actually brief those before the district court. I accept that they've been briefed. But the problem was that the district court didn't apply them, went a different way, so where should that be done now? Well, I understand that. I think we would argue that Henson is actually distinguishable from this case and for the same reasons that the court in Stratford decided to distinguish Henson and affirm the denial of the Rule 60B motion, that this court can and should do the same thing here. Okay, well, there's another potential argument. Same basic problem, though. In the wake of Henson, we have questions that need to be answered that aren't answered by the existing district court order. So what should happen next? Should we try to take that on ourselves? Should we remand to the district court for it to do it in the first instance? I'm not sure we have a position on what should happen. I think this court is able to decide how best to address that. Let me ask you this. So I asked the opposing counsel, and he's going to perhaps talk about it in his rebuttal time. This case has been down quite a few times. I mean, the first time I had this case, I was one of the newer judges on this court. Would it help or hurt things to have the two parties sit down with someone in our mediation office and talk through it? Because this case has been bouncing around for a very long time. I mean, obviously, look, the first response is we want to win, and we want to win now. Okay, I got that. That was probably true in 2013, and it was probably true in 2015. Right. We're now in 2020. What efforts have been made to mediate this case, and do you think that's something that the parties should sit down and do? Well, you're absolutely correct that this case has been going back and forth for a very long time, and it's, frankly, longer, I think, than my career. And I believe that there was a time that there may have been some efforts in mediation, and I don't have the personal familiarity to speak on what was the outcome there and whether and why things might have fallen apart. I don't know that I'm in a position right now to say, yes, we absolutely should go ahead and mediate, but I also don't know if I'm in a position to say that it would not be successful at all. So, unfortunately, I don't really have an answer to that, but we can definitely go back and discuss it. Well, what I've seen other parties do at times is file a letter within a week of arguments saying whether they'd be open to mediation or not. It's something you can – we can issue an order saying that, or you can just do it. So think about that after the argument. You want to talk to your client about that. Yes, of course. Well, my time is starting to go, so I just want to make sure that I make a couple of other points. Sure. One significant point that I'd like to make is a point about judicial estoppel. Bobbitt is judicially estopped from now taking the position that his voluntary dismissal was not final. The very basis for his motion for voluntary dismissal was that it would be final. He argued that the defendants would not be prejudiced because his claims would be gone forever. He succeeded on that motion. The district court granted it, and so he's bound by that representation. And not only that, but his counsel, who then represented the intervener, Labor, continued to represent over the course of five years to three different courts over and over again that Bobbitt's claims were gone forever. It wasn't just something that they were attempting to do but didn't really mean it with respect to Bobbitt. His claims were gone. So I understand that the intervener on appeal made a motion in the district court to intervene as a class plaintiff, and as I understand it, the court never explicitly reached that. Is that right? I believe that is correct, yes. And so even if you are correct that Mr. Bobbitt is judicially estopped, would that bar, would the judicial estoppel bar the intervener from if we sent this case back to the district court saying, no, you should still let me intervene, set aside the judgment under Rule 60B and let me intervene as a class plaintiff? Well, Labor's intervention motion, the one that was granted, was an intervention that was very specifically for the sole purpose of taking up the appeal. He only made that second intervention motion after this court issued its mandate in 2015 reversing the denial of class certification. And so it was on that basis that Labor then said, well, now I can move forward. The Supreme Court vacated that mandate and so I think we would argue that that kind of wiped out his second intervention motion and that there's really no basis for him to be allowed to make a similar motion now. So, again, your view is that Mr. Bobbitt is judicially estopped. The change in the law makes no difference in the evaluation of the judicial estoppel. The intervener has no right to come back into district court at all and that, therefore, even if the Henson factors would otherwise counsel in favor of 60B, this specific representation by Mr. Bobbitt, I'm never going to come back that that somehow just ends the case. Well, I think we would argue that the 60B factors actually counsel against relief in this case and we briefed that below. But, yes, I mean, I think our position is that much like the outcome in the Stratford case where, you know, the plaintiffs attempted to take an appeal, they were unsuccessful, they attempted Rule 60B relief, they were unsuccessful, their case is over. That's the end result. There's no reason that that end result should not occur here and, honestly, all the more so because in that case, the plaintiffs were held accountable to taking a knowing risk of losing everything. Here, Bobbitt deliberately chose to give everything up. Thank you very much, Counsel. Thank you so much. Let's go three minutes. Judges Clifton and Bennett, on your questions, is there, are the class claims gone? The answer is no. It's often the case after a court of appeals reverses a class certification denial that there will be an empty chair back in the trial court. That can happen in the United Airlines case where the named plaintiff settles but then the Supreme Court has told us nevertheless has an interest in appealing class certification denial. Then you get back to the district court, there's an empty chair. That's exactly why Mr. Labor filed his intervention motion. It can also happen where a plaintiff, individual plaintiff, tries his claims, loses on the merits, but then is still allowed under Supreme Court law, Garrity-Roper, to appeal denial of class certification. You get back in the trial court, that's not a valid class member anymore. He lost, but there's an empty chair and you file a motion for a new class member to appear. So I think this goes to the finality factor. The case was still going to be ongoing. There's a great quote in Henson, Judge Tashima said it better, I wish we'd said it in our briefs, about the whole idea of finality, the finality prong in this context. And what the court said is, well, the whole point of Microsoft v. Baker is that the judgment was not final. So with respect to how much we should ask, is there a reliance of finality when we're analyzing that factor, it's kind of a flawed inquiry to start with. And the other point I'd make is, we're not the only ones that changed position in this case. The defendants got this court to reverse, basically, by arguing there is no finality here. Now, of course, they're saying they have an expectation in finality. On the Stafford case, another distinction, Judge Bennett, you made some good points about why the Stafford case is distinguishable. Another one is, it was important to the court, it said, look, when the voluntary dismissal was filed by the Henson plaintiffs, the defendants vehemently opposed it. That didn't happen here. When we filed our motion for voluntary dismissal, the defendants filed a one-and-a-half-page non-opposition in which they said we take no position with respect to whether voluntary dismissal should be granted. So yet another distinction from the Stafford case. With respect to this question, should the case be remanded for a Rule 60B analysis in light of Henson, I've given my answer. I think it makes the most sense for the court to analyze that. It's been briefed. But again, I'd note that I think that question only gets reached if this court disagrees with me on the issue we haven't really talked about much today, that the fresh 2018 judgment separately creates appellate jurisdiction in this case and has merged into that decision are all prior orders in the case. We're happy to mediate anywhere. I'm tempted to quote Sam I.M., on a plane, on a train, in a boat. We'll mediate. We recommend Hawaii as a destination you may want to consider. I almost started with Aloha today, but I thought that'd be a little cheeky. That was Monday I said that. All right. Well, thank you very much. Thank you both, counsel, for your argument in this case. And this panel will return on Friday this case is submitted. Thank you.
judges: Clifton, Owens, Bennett